**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

NURULLAH YILDIRIM,

    Petitioner,

v.                                                 Case No: 8:13-cv-228-T-30TBM
                                                     Crim. No: 8:10-cr-102-T-30TBM

UNITED STATES OF AMERICA,

    Respondent.

## ORDER

THIS CAUSE comes before the Court upon the petition of Nurullah Yildirim pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct his sentence (Dkt. #1), and the Government's response (Dkt. #9). Upon review of the pleadings and the record, the Court concludes that the petition should be denied because it fails to meet the requirements of 28 U.S.C. § 2255.

Yildirim was found guilty by a jury of:

(1)     conspiring to possess five kilograms or more of cocaine with the intent to distribute it, while aboard a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. §§ 70503(a) and 70506(a) and (b) and 21 U.S.C. § 960(b)(1)(B)(ii), and

(2)     possessing five kilograms or more of cocaine with the intent to distribute it, while aboard a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. §§ 70503(a) and 70506(a), 18 U.S.C. § 2, and 21 U.S.C. § 960(b)(1)(B)(ii).

Although the guideline minimum was 360 months, this Court varied downward and sentenced Yildirim to 186 months. He appealed, contending that the Government committed prosecutorial misconduct, that this Court erred in applying an obstruction of

Page **1** of **13**

justice enhancement to his sentence based on perjury, and that his sentence was unreasonable. The Eleventh Circuit affirmed. *United States v. Yildirim*, 444 Fed. Appx. 437 (11th Cir. 2011).

Yildirim timely filed this petition for habeas relief raising the following grounds:

**Ground One:**     Yildirim is actually and factually innocent of his conviction, in light of *United States v. Bellaizac-Hurtado*.

**Ground Two:**     Counsel provided ineffective assistance by failing to move the Court for automatic dismissal of the indictment based upon the Court's failure to make "ends of justice" findings as required by the Speedy Trial Act when granting trial continuances.

**Ground Three:**   Counsel provided ineffective assistance during the pre-trial and trial process.

Yildirim and his nephew, Benli Hakan Huseyin Ummahani, and Leonel Lamadrid Ledesma were found by the United States Coast Guard on a sailboat off the coast of San Andreas Island. The Coast Guard, under rather unusual circumstances, discovered almost a ton of cocaine on board Yildirim's sailboat, the *Caribbean Dream*. Yildirim testified that he and his nephew were on vacation "traveling between Panama and Colombia, when their boat was overtaken by Colombian pirates, who forced them to take on the cocaine and Ledesma (as a load guard), and to alter their course from Panama to San Andreas Island. In contrast, Ledesma, who pled guilty, testified that all three of them were willingly tasked with transporting the cocaine safely from one destination to another." *U. S. v. Yildirim*, 444 Fed. Appx. 437, 440 (2011).

According to Ensign William Birch[1], the primary boarding officer,  the Coast Guard encountered the *Caribbean Dream* on February 24, 2010, about one hundred miles

---

[1] The following facts are taken from the testimony of Ensign Birch, which was unrebutted at trial. Trial Transcript, Dkt. #105, pp. 5, *et seq.*, 8:10-cr-102-T-30TBM.

off the coast of San Andreas Island. As the Coast Guard cutter approached, the sailboat changed course and went in the opposite direction, immediately drawing the attention of the Coast Guard. Birch went through the standard procedure of asking routine questions of the master of the *Caribbean Dream*, which turned out to be Yildirim. He had difficulty receiving answers because Yildirim spoke in very broken English. When asked where he was headed, Yildirim gave a vague answer mentioning several different ports, none of which included San Andreas Island. Yildirim initially said there were three people on board, but when Birch asked for their nationalities, Yildirim replied that there were two people on board and both were Turkish. Because of the difficulty in getting answers from Yildirim, Birch received permission from his captain to take a small boat alongside the *Caribbean Dream* to ask questions in person.

When Birch pulled alongside the sailboat, Yildirim, who identified himself as the captain, said his vessel had a Panamanian registration, but that his home port was Cartagena, Colombia. Birch asked to see the registration of the vessel to get the documentation number and Yildirim handed him the vessel documentation. One of the documents was the vessel's zarpe. A zarpe is a certificate received by a vessel from South American countries indicating permission for the vessel to enter or leave the country. The most recent zarpe was from San Andreas Island from August of 2009. During the questioning, Yildirim denied that he had ever been to San Andreas Island, which was obviously contrary to the information in the zarpe. Yildirim also said that his boat was kept in Cartagena, Colombia, but he had flown into Colon, Panama, two days before to begin a vacation.

Birch thought Yildirim was not being truthful. In Birch's words:

Page 3 of 13

> When I continued talking to him, I tried to figure out a little bit more about his story, why he was down here: and it seemed to be very odd that somebody would come down to the Caribbean, depart Cartagena, not be fluent - - at least somewhat fluent in either English or Spanish, but be able to fly into Panama, somehow get to Cartagena, depart on the sailboat, and not really know where he's going, yet he's a hundred miles off shore.

Trial transcript, Dkt. #105, p. 27, criminal case number 8:10-cr-102-T-30TBM. Birch and his team then returned to the Coast Guard cutter.

Based on the suspicious activity, Birch's operational commander received permission from the Panamanian authorities to board the Yildirim's sailboat. Birch returned to the sailboat with his team the next morning. As they pulled up to the side of the vessel, Yildirim's nephew jumped from the sailboat into the inflatable Coast Guard boat. The Coast Guard now had an unexpected person with no life jacket aboard its vessel. Yildirim started to jump into the boat until Birch commanded him not to. Birch then boarded the sailboat for the purpose of obtaining a life jacket for the crew member in the Coast Guard vessel.

Birch went on board with part of his team, had Yildirim frisked, and put Ledesma in handcuffs. He then needed life jackets for Ummahani and Yildirim, Ummahani because he was in the Coast Guard vessel without a jacket and Yildirim because he was now claiming to be injured.

Birch asked Yildirim where he could find the life jackets and Yildirim, now speaking plain English, told him they were down below in the cabin. Birch went to look for the life jackets and before he entered the cabin, he saw what he believed to be cocaine in plain view.[2]

---

[2] Trial transcript, Dkt. #105, pp. 43-45, case number 8:10-cr-102-T-30TBM.

Page 4 of 13

Ultimately, all three individuals were detained and returned to Tampa, Florida for prosecution.

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 2255, a prisoner in custody under a sentence from a federal court has the right to habeas relief if he can show that his sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law. The burden is on the prisoner to come forward with supporting evidence to demonstrate his or her entitlement to relief.

Here, one of the Constitutional violations claimed by Yildirim is ineffective assistance of counsel. The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland*, 466 U.S. at 687.

*Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we

are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id*. at 690.

Petitioner must demonstrate that counsel's error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691-92. To meet this burden, Petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

## DISCUSSION

**Ground One:**     Yildirim is actually and factually innocent of his conviction, in light of *United States v. Bellaizac-Hurtado*.

In support of ground one, Yildirim states:

In the instant case at bar, movant Yildirim was arrested on board a vessel in Nicaraguan territorial waters and not in the jurisdiction of the United States. Because movant Yildirim was not in the high seas (International Waters) but in Nicaraguan territorial waters, the United States lacked subject matter jurisdiction to arrest movant and movant Yildirim's Indictment must be dismissed and his conviction must be vacated.

Petitioner's memorandum in support of petition, Dkt. #1, p. 17 of 37.

Yildirim offers no support for his statement that his vessel was located in the territorial waters of Nicaragua at the time he was interdicted by the Coast Guard. The unrebutted testimony at trial about the location of the vessel came from the Coast Guard which placed the vessel approximately 75 to 100 miles southeast of San Andreas Island in international waters.[3]

Therefore, Yildirim's reliance on *Bellaizac-Hurtado*, 700 F. 3d 1245 (11th Cir. 2012) is misplaced. *Bellaizac-Hurtado* concerned defendants who were discovered by Panamanian authorities in the territorial waters of Panama and chased into the Panamanian jungle where they were arrested. Panama then transferred the prisoners to the United States authorities for prosecution.

Since Yildirim was apprehended in international waters, *Bellaizac-Hurtado* is inapplicable to him. The United States does have jurisdiction over vessels it apprehends in international waters with the permission of the country with which the vessel is registered. *United States v. Tinoco*, 304 F. 3d 1088 (11th Cir. 2002). Therefore, ground one lacks merits.

**Ground Two:**   Counsel provided ineffective assistance by failing to move the Court for automatic dismissal of the indictment based upon the Court's failure to make "ends of justice" findings as required by the Speedy Trial Act when granting trial continuances.

In support of ground two, Yildirim contends that the trial began eighteen days beyond the expiration of the speedy trial period:

> The District Court Failed to make the required "ends of justice" findings in continuing the trial date. Thus, the 70-day period in which a defendant must be brought to trial pursuant to the Speedy Trial Act ("STA") had

---

[3] Testimony of Ensign Birch, Dkt. #105, pp. 7-8.

> elapsed and the Indictment was due to be dismissed. This, notwithstanding that counsel has never moved the Court for continuances. Counsel Fitzgerald-Hall was ineffective for failing to move the Court for dismissal of the Indictment.
>
> In extending the trial date, the Court failed to make the statutorily-required "ends of justice" finding in ordering such continuances, beyond the 70-day period in which a defendant must be brought to trial. Thus, even in a case where the movant has requested the continuances, the Supreme Court in *Zender v. United States*, 547 U.S. 489 (2006), made clear that even a defendant's waiver of the Act, does not relieve the Court of its statutory duty to make the requisite "ends of justice" findings.
>
> * * * *
>
> The STA clock in movant Yildirim's case began to run on March 11, 2010, the day after Yildirim's initial appearance. *United States v. Yunis*, 723 F. 2d 795, 797 (11th Cir. 1984) ("In calculating includable time, both the date on which an event occurs of the motion is filed and the date on which the court disposes of the motion are excludable."). No motion for pre-trial discovery was filed, but on March 12, 2010 this Court ordered "pretrial discovery." (DE #11). From there, the STA clock continued to run until the first day of trial on June 7, 2010, a total of 88 days. Adding no prior days of includable delay, the STA was violated by eighteen (18) days.

Petitioner's memorandum in support of petition, Dkt. #1, pp. 9-12.

Yildirim has mistakenly calculated the running of the speedy trial period. In fact, the 70 day speedy trial period had not run because of the excludable periods of time provided in the Act. Yildirim acknowledges that the speedy trial period began to run on March 11, 2010. On March 15, 2010, a co-defendant's lawyer requested protection from trial dates (Dkt. #15). The Court granted that motion on March 17, 2010. (Dkt. #19). Thus, three days are excluded pursuant to 18 U.S.C. § 3161(2)(h)(1)(F) and § 3161(7). Then on April 1, 2010, a status conference was held at which the Court was informed that the Government's Coast Guard witnesses were unavailable until Friday, June 4, 2010. (Dkt. #145, p. 4). The trial began June 7, 2010, the first Monday following the

availability of the Coast Guard witnesses. Any period of delay resulting from the unavailability of essential witnesses is automatically excludable. 18 U.S.C. § 3161(h)(3)(A). This excludable time began to run at least from the date of disclosure to the Court on April 1, 2010, and, unless Yildirim can demonstrate the Coast Guard witnesses were available sometime after March 11, 2010, the excluded period would be for the entire pre-trial period prior to the witnesses' availability on June 4, 2010.

Since Yildirim has not shown the Coast Guard witnesses to be available at any time prior to June 4, 2010, only three days of the 70 day speedy trial period actually ran prior to the beginning of the trial. If the excluded period for unavailability of witnesses began at the status conference on April 1, 2010, only sixteen days of the 70 day speedy trial period ran: March 12, 2010 through March 31, 2010 (nineteen days) less three days for the pendency of a co-defendant's motion. And, since the speedy trial period had not run, Yildirim's counsel was not ineffective for failing to file a motion to dismiss.

Yildirim has also failed to show any prejudice resulting from his counsel's failure to file a motion to dismiss. In order to show prejudice, Yildirim is required to demonstrate that the result of the proceeding would have been different.

First, a court is only required to put ends-of-justice findings on the record where a motion for continuance is granted. Here, no motion for continuance was granted.

Second, had defense counsel filed a motion to dismiss, even if the speedy trial period had run, the Court could still at that point have placed ends-of-justice findings on the record. Those findings only need to be put on the record at the time a defendant's motion to dismiss is filed. *Zedner v. United States*, 547 U.S. 489, 507 (2006). Yildirim

has failed to show that this Court would not have excluded the time necessary for essential witnesses to appear to testify at trial. In fact, he has not attempted to do so.

And third, when a motion to dismiss is filed after the speedy trial period has run, any dismissal, in the discretion of the court, may be without prejudice. 18 U.S.C. § 3162(a)(2). A dismissal without prejudice would have allowed the Government to immediately re-file the charges. The trial may have been delayed, but Yildirim has not shown that the resulting outcome would have been any different. In fact, Yildirim has not attempted to show that a dismissal by this Court would have been with prejudice as opposed to without prejudice.

For all of the foregoing reasons, Yildirim has failed to show deficient performance on the part of his counsel.

**Ground Three:**    Counsel provided ineffective assistance during the pre-trial and trial process.

In support of ground three, Yildirim contends:

Counsel Fitzgerald-Hall failed to file a motion for severance from his cousin-codefendant Hakin, did not submit a motion for a Bill of Particulars, did not submit Rule 12 motions and failed to file a motion for dismissal of the Indictment. Counsel Fitzgerald-Hall committed more damaging and severe errors that deprived movant Yildirim of his Sixth Amendment right to effective assistance of counsel.

Critical and damaging were counsel Fitzgerald-Halls omission before and during the trial to challenge that the U. S. Coast had presented No documented evidence that it had permission to search the vessel – the Caribean Dream.

* * * *

Furthermore, counsel Fitzgerald-Hall failed to challenge the erratic manner in which the GPS position monitoring was presented at trial. The GPS was not challenged, because it would have clearly shown that the vessel the

Page **10** of **13**

> Caribean Dream was in the territorial waters of Nicaragua. Conveniently, NO GPS position is shown to demonstrate conclusively the position of the vessel – the Caribean Dream.
>
> Lastly, at this juncture, the movant would show the Court that counsel Fitzgerald-Hall doomed the movant to a long prison sentence, when he failed to communicate a formal plea offer from the prosecution. The Sixth Amendment right to effective assistance of counsel extends to the negotiation and consideration of plea offers that lapse or are rejected; defense counsel has a duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused.
>
> * * * *
>
> In the instant case at bar, there existed a government plea offer, that was never communicated to movant Yildirim. Additionally, the government plea offer was never shown and given to movant, so that he could look over it, ponders its significance, and take his time and think about accepting it rather than gambling at a longer prison sentence by going to trial. Movant Yildirim being a Turkish national was/is unfamiliar the American legal system, especially the Federal Court system, where 98% of defendant's plead guilty. It was counsel Fitzgerald-Hall's fiduciary duty to communicate and give movant a copy of the government's plea offer. If this would have happened, movant Yildirim, better understanding the federal legal system, would have pled guilty to lesser years in prison than he received after the three day trial.

Petitioner's memorandum in support of petition, Dkt. #1, pp. 16-19.

While Yildirim claims his counsel performed deficiently by not filing a motion for severance, a motion for bill of particulars, and Rule 12 motions, he provides no factual support as to how these motions would have worked to his benefit or changed the outcome of the case. He therefore has failed to show prejudice.

The same infirmity applies to Yildirim's claim that his counsel failed to challenge the U. S. Coast Guard documented evidence that it had permission from Panama to search his vessel. First, Yildirim fails to demonstrate that the permission did not actually

exist and, without that proof, he fails to show prejudice. Second, Yildirim fails to explain why the exigent circumstances of Ensign Birch's need to obtain a life jacket for Ummahani was not sufficient by itself to board his boat where Birch saw the cocaine in plain view.

Next, Yildirim claims his counsel performed deficiently by not challenging "the erratic manner in which the GPS position monitoring was presented at trial." He does not explain what he means by "the erratic manner" of presenting the evidence, but that is beside the point. When Yildirim testified at trial, he did not say the Coast Guard was wrong in its calculation of his location at the time of his detention. And, he offers no evidence now to refute the record evidence. Therefore, this portion of ground three fails for lack of factual support.

And, lastly, Yildirim claims that his counsel "failed to communicate a formal plea offer from the prosecution." This statement is conclusory and self-serving. He does not explain factually how he knows there was a plea offer if one was never communicated to him. And he fails to state the term of imprisonment allegedly offered by the Government to demonstrate how he was prejudiced by his counsel's failure to communicate it to him.

Yildirim will be given thirty (30) days to supplement his petition, if he truthfully can, to supply these missing facts on the plea offer issue. The supplement must be sworn, under penalty of perjury, as was the original petition. Yildirim is cautioned about the potential consequences of committing perjury.

It is therefore ORDERED AND ADJUDGED that:

1. Grounds one and two of the petition are DENIED.

2. Within thirty (30) days of the date of this Order, Yildirim may supplement his petition as stated herein on the issue of his counsel's alleged failure to communicate an existing plea offer to him.

**DONE** and **ORDERED** in Tampa, Florida, this 16th day of August, 2013.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record

F:\Docs\2013\13-cv-228 evid hearing 2255.docx